O

NO JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| WEST COAST LIFE INSURANCE COMPANY,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>GLENDA CLARK, an individual, and KATHLEEN CLARKE-PATERSON, an individual, formlerly known as KATHLEEN CLARKE STOKES,<br><br>　　　　　　Defendants.<br>_____ | Case No. CV 13-06249 DDP (VBKx)<br><br>**ORDER GRANTING DEFENDANT AND CROSS-CLAIMANT GLENDA CLARKE'S MOTION FOR SUMMARY JUDGMENT**<br><br>[DKT. NO. 36] |

　　Presently before the Court is Defendant and Cross-Claimant Glenda Clarke's motion for summary judgment (the "Motion"). For the reasons stated in this Order, the Motion is GRANTED.

**I. Background**

　　The basic facts underlying this interpleader action are not in dispute. Plaintiff West Coast Life Insurance Company ("WCLIC") filed this action after a dispute arose as to the proper beneficiary under a life insurance policy on the life of Jeffrey L. Clarke ("Decedent"). (See Complaint, Docket No. 1.) WCLIC filed the

action against Defendants Glenda Clarke ("Glenda"), Decedent's ex-wife, and Kathleen Clarke-Paterson ("Kathleen"), Decedent's sister.[1] (Id.) WCLIC has now been discharged from the action. (Docket No. 30.)

Glenda and Decedent were married on July 25, 1998. (Decl. of Glenda Clarke, Docket No. 40, ¶ 2.) At the time of their marriage, Glenda owned a business, Television Tickets, which she continued to operate as a sole proprietorship until June 2004. (Id. ¶ 3.) In June 2004, Glenda and Decedent formed a corporation, Hollywood Tickets, Inc. ("HTI"). (Id. ¶ 4.) Glenda managed HTI and contributed the assets of Television Tickets to HTI in exchange for a 55% interest in HTI. (Id.) Decedent received a 45% interest in HTI because of his skills in web design and digital technology. (Id.)

In 1999, Decedent and Glenda decided to take out life insurance policies to protect their business interests in the event that one of them died. (Id. ¶ 5.) In the end, they decided to take out a single policy on the life of Decedent because Decedent could inherit the business and continue to run it if Glenda died, due to his technology skills, but Glenda would be unable to operate the business alone if Decedent died because she lacked those skills. (Id. ¶¶ 5-6.) WCLIC issued a life insurance policy on the life of Decedent, policy number Z00826419 (the "Policy"), effective December 28, 1999. (Id.; see also Exh. A.) The Policy originally named Glenda as the primary beneficiary and Decedent's mother,

---

[1]Because several of the individuals involved share the same last name, the Court identifies these parties by their first names for clarity.

Peggy Sue Clarke-Biddle, as the contingent beneficiary, although she died before Decedent. (Glenda Decl. ¶¶ 8-9; see Exh. A.) The Policy states that "[t]he policy owner may name or change beneficiaries or contingent beneficiaries at any time during the lifetime of the insured. After the naming or change is recorded at our home office, it will be effective as of the date the policy owner requested it. It will not apply to any payment made or action taken by us before it was recorded." (See Exh. A.)

All premiums on the Policy between 1999 and 2004 were paid by Television Tickets. (Glenda Decl. ¶ 10.) Between June 2004 and November 2007, all premiums were paid by HTI. (Id. ¶ 11.) Glenda and Decedent separated on November 17, 2007, and Glenda filed for divorce two days later. (Id. ¶ 2.) After Decedent and Glenda separated, all premiums were paid by HTI, with the exception of the 2009 premium, which was paid by Decedent. (Id. ¶¶ 12-13.)

Following their separation in November 2007, Decedent and Glenda continued to operate HTI together. (Id. ¶ 16.) There is some dispute as to the nature of their relationship during this time; Glenda claims that she and Decedent maintained a "business relationship" and that they were in "frequent communication" while Kathleen provides evidence that they became embroiled in an acrimonious and drawn-out divorce. (Id.; see also Glenda Depo., Docket No. 51.) Their divorce became final on November 16, 2012. (Glenda Decl. ¶ 18.) The divorce judgment made no mention of the Policy. (Id. ¶ 19.) Decedent died eight days later, on November 24, 2012. (Id. ¶ 21.)

In May 2009, after Decedent and Glenda separated but before their divorce became final, Decedent filled out and signed a change

3

of beneficiary form for the Policy and entrusted that form to Kathleen. (Docket No. 52, Exh. A; Decl. of Susan Cakl, Docket No. 50-2, ¶¶ 2-3; Decl. of Kathleen Marie Paterson, Docket No. 50-3, ¶ 4.) The form designated Kathleen as the primary beneficiary of the Policy. (Docket No. 52, Exh. A.) This form was never submitted to WCLIC by Decedent, but was eventually submitted by Kathleen two months *after* Decedent's death. (Paterson Decl. ¶ 6.) According to Kathleen, Decedent believed that he could not submit the form while his divorce was still pending due to the issuance of the standard mutual restraining order. (Paterson Decl. ¶ 4.) The restraining order, issued in all California divorce cases, prohibits "changing the beneficiaries of any insurance or other coverage, including life ... held for the benefit of the parties" while the divorce is pending. Cal. Fam. Code § 2040(a)(3). This order remains in effect until a final judgment of dissolution is entered, unless modified or terminated by court order at an earlier date. Cal. Fam. Code § 233(a). Decedent requested a second change of beneficiary form from WCLIC in 2011, but there is no evidence that he ever filled out that form. (Complaint ¶ 8.) Glenda states that at no time did Decedent inform her that he intended to change the beneficiary of the Policy. (Glenda Decl. ¶ 21.) Both Glenda and Kathleen claim that they are the proper primary beneficiary of the Policy. Glenda now seeks summary judgment.[2]

---

[2] Glenda has objected to some of the evidence provided by Kathleen in opposition to the Motion, specifically to statements contained in the declarations of Kathleen Marie Paterson and Susan Cakl. (Docket No. 54.) Glenda bases these objections on her argument that they are hearsay and do not fall within any hearsay exceptions. However, the Court finds that (1) the statements are not hearsay when used to show what Decedent believed or intended at
(continued...)

4

**II. Legal Standard**

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences from the evidence must be drawn in favor of the nonmoving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 242 (1986). If the moving party does not bear the burden of proof at trial, it is entitled to summary judgment if it can demonstrate that "there is an absence of evidence to support the nonmoving party's case." Celotex, 477 U.S. at 323.

Once the moving party meets its burden, the burden shifts to the nonmoving party opposing the motion, who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. Summary judgment is warranted if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. A genuine issue exists if "the evidence is such that a reasonable

---

[2](...continued)
the time he made the statements and (2) the Court need not rely on the statements in determining the outcome of the Motion.

jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248. There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not the court's task "to scour the record in search of a genuine issue of triable fact." Keenan v. Allan, 91 F.3d 1275, 1278 (9th Cir. 1996). Counsel has an obligation to lay out their support clearly. Carmen v. San Francisco Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001). The court "need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposition papers with adequate references so that it could conveniently be found." Id.

**III. Discussion**

It is undisputed that Glenda was the original beneficiary of the Policy when it was first issued in 1999. Therefore, in order for Kathleen to be the primary beneficiary of the Policy, Decedent, as the policy owner, must have properly effectuated a change of beneficiary naming Kathleen as the primary beneficiary.

Generally, California law requires strict compliance with the terms of a life insurance policy in order to change the designated beneficiary, and no change is effectuated in the absence of such strict compliance. See, e.g., Life Ins. Co. of North America v. Ortiz, 535 F.3d 990, 994 (9th Cir. 2008). However, there are three recognized exceptions to this rule, whereby a change may be effected so long as the policy owner *substantially* complies with

6

the policy's requirements: "(1) when the insurer waives strict compliance with its own rules regarding the change; (2) when it is beyond the insured's power to comply literally with the insurer's requirement; or (3) when the insured has done all that he could to effect the change but dies before the change is actually made." Id. (citing Cook v. Cook, 17 Cal.2d 639, 648-49 (1941)); see also Pimentel v. Conselho Supremo, 6 Cal.2d 182, 187-88 (1936).

The Policy explains how to change the beneficiary as follows: "The policy owner may name or change beneficiaries or contingent beneficiaries at any time during the lifetime of the insured. After the naming or change is recorded at our home office, it will be effective as of the date the policy owner requested it. It will not apply to any payment made or action taken by us before it was recorded." (See Docket No. 40, Exh. A.)

Kathleen argues in a footnote that the formal requirements of the Policy were complied with. (Opp. to Mtn., Docket No. 50, p.16-17 fn.14.) She argues that the plain language of the Policy contemplates two steps to effect a beneficiary change: (1) the policy owner makes the change and (2) at some later time, the change is "recorded." (Id.) However, under this reading of the provision, there is no indication as to how the policy owner is actually supposed to effect the change. Further, reading the entire provision together, any change becomes effective "as of the date the policy owner requested it." This portion of the provision contemplates a "request" from the policy owner to change the beneficiary. A request necessarily implies some sort of communication from the policy owner to WCLIC regarding the desired change. The date on which the request is made is the earliest date

7

on which the change becomes effective. Because Decedent never sent his change of beneficiary form to WCLIC or otherwise "requested" such a change, it cannot be said that Decedent strictly complied with the Policy's requirements for changing the beneficiary of the Policy. Therefore, in order to avoid summary judgment in favor of Glenda, Kathleen must show that there is an issue of fact as to one or more of the exceptions to strict compliance with the Policy.

Kathleen argues that all three exceptions potentially apply. *First*, she argues that by interpleading the Policy proceeds instead of paying them directly to Glenda, WCLIC has waived strict compliance with the Policy's requirements. This argument is unpersuasive. The California Supreme Court has held that "[w]hile there is a division of authority on the question of whether interpleader and payment into court operates as a waiver of the insured's failure to comply with the policy provisions concerning change of beneficiary, it is settled in this jurisdiction that it does not." Pimentel, 6 Cal.2d at 185. "Institution of an action in interpleader, in short, does not waive compliance with the prescribed procedures. It merely relaxes the requirements, and a court of equity may give effect to an intended change if 'the insured [made] every reasonable effort under the circumstances, complying as far as he [was] able with the rules,' and if there has been 'a clear manifestation of intent to make the change.'" Manhattan Life Ins. Co. v. Barnes, 462 F.2d 629, 632 (9th Cir. 1972) (quoting Pimentel, 6 Cal.2d at 188). Therefore, the fact that WCLIC filed this interpleader action does not constitute a waiver of strict compliance, and the Court must consider the other

relevant exceptions to determine whether a change of beneficiary was effectuated.

*Second*, Kathleen argues that it was "beyond the power" of Decedent to comply with the Policy requirements because during the entire pendency of his divorce from Glenda, he was subject to the standard mutual restraining order prohibiting any change of beneficiary. This argument is unpersuasive for several reasons. First, the language of the exception suggests a more technical or physical inability to comply rather than a legal restriction on compliance, as the cases discussing the exception describe it as an inability to "comply literally" with the requirements. See, e.g., Pimentel, 6 Cal.2d at 188. Second, were the Court to hold that the restraining order in the divorce proceeding excused strict compliance, then the restraining order would become meaningless; *any* party to a divorce proceeding in California, where the parties are automatically subject to the restraining order, could effect a change of beneficiary in spite of the family court's prohibition on doing so by invoking this exception and "substantially complying" in the way that Decedent did here. This would be an absurd result. Third, the restraining order automatically applies to every divorce proceeding, but upon stipulation of the parties or order of the family court, the restraining order may be lifted prior to the entry of final judgment. See Cal. Fam. Code § 233(a). In the absence of any evidence indicating that Decedent attempted to seek such a stipulation or order, it cannot be said that it was truly "beyond [his] power" to strictly comply with the requirements for making a beneficiary change. Finally, as soon as the divorce became final, it clearly *was* within Decedent's power to effect a change of

beneficiary prior to his death. Therefore, the Court finds that this exception does not apply.

*Third*, Kathleen argues that Decedent did all he could before his death to effect the change. In order to satisfy this exception, the insured must "make[] every reasonable effort under the circumstances, complying as far as he is able with the rules" and there must be a "clear manifestation of intent to make the change, which the insured has put into execution as best he can." Pimentel, 6 Cal.2d at 188. Here, Decedent did not make every reasonable effort under the circumstances for at least two reasons. First, Decedent could have made an attempt to modify the restraining order or otherwise brought up the change of beneficiary issue in the divorce proceedings and final judgment. At least some inquiry or motion to the family court was necessary in order to find that Decedent made "every reasonable effort" under the circumstances. Second, Decedent had 8 days following his death to effectuate the change. There are no facts to indicate that Decedent did *anything* during those 8 days to ensure that the change of beneficiary was effectuated, nor is there any evidence that Decedent was incapacitated during that period such that he was unable to perform additional acts toward accomplishing the change.[3] Therefore, the Court finds that Decedent did not make every reasonable effort under the circumstances to effect the change.

---

[3] This exception has typically been applied when policy holders give completed change of beneficiary forms to a third parties to mail immediately when on their deathbeds. Pimentel, 6 Cal.2d at 189; Johnston v. Kearns, 107 Cal.App. 557, 559 (1930). This situation is inapplicable here, where Decedent gave a change of beneficiary form to Kathleen to hold on to indefinitely and where Decedent did nothing in the days leading up to his death to further any attempt to effect the change.

10

Finally, Kathleen makes an overarching argument that effect should be given to Decedent's intent at the time of his death as to who he wished to be the primary beneficiary of the Policy. It is true that Decedent's intent at the time of his death is the subject of genuine factual dispute. However, the presence of a factual dispute as to Decedent's intent with regard to the Policy beneficiary is not material in the absence of substantial compliance with the Policy's requirements. Even a party's *clear* intent to change a beneficiary is insufficient to override a failure to strictly comply with a policy's requirements in order to effect a beneficiary change; the only exceptions recognized in California are the three previously discussed, and all require substantial compliance with the insurer's rules. See Moss v. Warren, 43 Cal.App.3d 651, 656 (1974) (finding that even where evidence "could properly be viewed as a clear manifestation of [decedent's] intent to make a change of beneficiary, such intent, standing alone, did not relieve [decedent] from the duty to substantially comply with the insurer's rules"); see also State Farm Life Ins. Co. v. Brockett, 737 F.Supp.2d 1146, 1159 (E.D. Cal. 2010). Therefore, although Decedent's *intended* beneficiary at the time of his death is disputed, this dispute does not defeat Glenda's motion for summary judgment.

///
///
///

**IV. Conclusion**

    For the foregoing reasons, the Court GRANTS the Motion. Glenda is entitled to the interpled funds.

IT IS SO ORDERED.

Dated: June 2, 2014

DEAN D. PREGERSON
United States District Judge